[Civ. No. 6639.   Third Dist.   June 5, 1942.]

EDWARD M. HOWELL et al., Plaintiffs and Respondents, v. GERTRUDE M. DOWLING et al., Appellants; ALAMEDA COUNTY TITLE INSURANCE COMPANY (a Corporation) et al., Defendants and Respondents; AMERICAN TRUST COMPANY (a Corporation), Cross-Defendant and Respondent.

Louis B. DeAvila for Appellants.

McKee, Tasheira & Wahrhaftig, Ridley Stone and Malcolm Tuft for Cross-Defendant and Respondent.

Silverstein & Silverstein for Plaintiffs and Respondents.

THE COURT.—This is an appeal from a judgment in an action to quiet title originally brought by the owners of real property against the alleged beneficiary and substituted trustees under a deed of trust (defendants and appellants), for the purpose of having declared void the said deed of trust and the promissory note thereby secured. The defendants and

appellants by answer and cross-complaint set forth the nature of their claim, asserting in themselves a first deed of trust with an express warranty of title on the property and bringing in as a new party the cross-defendant, and seeking to have the deed of trust of the cross-defendant subordinated to the deed of trust asserted by the defendant and appellant, George F. Dowling, hereinafter referred to as the Marshall-Dowling deed of trust. The other defendants and appellants are alleged substituted trustees under the Marshall-Dowling deed of trust.

The cross-defendant, American Trust Company, answered, claiming to be the beneficiary under a first deed of trust.

The trial court adjudged that plaintiffs were the owners in fee of the real property involved, subject only to the lien of the deed of trust of cross-defendant and respondent, American Trust Company, a corporation, and that the note and deed of trust to Marshall were void because of fraud in their procurement.

The essential facts are these:

Some time prior to October 11, 1926, respondents Edward M. Howell and Arlivia Howell, his wife (hereinafter referred to as the Howells) were the owners in fee of said real property, which was situated in the city of Oakland, California, and while such owners entered into a contract with one Marshall, a building contractor, to construct a house for them on said premises. Said building was erected, being completed on September 24, 1926.

On October 11, 1926, the Howells owned said property clear of liens and encumbrances and on said day they executed and delivered a note for $4,500 to M. Jacobson and a first deed of trust on said real property securing the same, with said M. Jacobson as beneficiary. On said date they executed and delivered a note for $2,900 to said E. Marshall, together with a second deed of trust securing the same, on said real property.

The note and deed of trust to E. Marshall were given in payment of the balance due upon the building contract and were procured upon the false and fraudulent representation by Marshall that he would pay for all labor and materials used upon said house and thereby protect the property against liens. This Marshall failed to do.

Thereafter Marshall arranged to borrow $1,500 upon said note and deed of trust from appellant George F. Dowling, who for thirty years had been engaged in business as a real

estate broker, builder, speculator and financier of houses and sales. For said sum of $1,500 he signed a note for $1,600, with a collateral agreement thereto attached, as follows:

"And as collateral security for the payment of the above note, and interest. I have deposited with GEORGE F. DOWLING the following property, to-wit:

" '1. Promissory note dated October 12, 1926, made by Edward M. Howell and Arlivia Howell to the order of E. Marshall, in the amount of $2900.00, payable in monthly installments of $33.25, and bearing interest at the rate of seven per cent per annum;

" '2. Deed of Trust dated October 12, 1926, made by Edward M. Howell and Arlivia Howell, his wife, to Alameda County Title Insurance Company, a corporation, Trustee conveying Lot No. 15 and the Northeasterly 24 feet of Lot No. 14 in Block No. 1, Map of Auseon's Moss Tract, Brooklyn Twp., Alameda County, Calif., recorded under Recorder's Series No. ——, Official Records of Alameda County, California, and securing promissory note in the amount of $2900.00 mentioned under item 1 above;

" '3. Assignment of Note and Deed of Trust, dated October 22, 1926, made by E. Marshall to George F. dowling, assigning the note and the deed of trust mentioned under items 1 and 2 above; which assignment was recorded under Recorder's Series No. ——, Official Records of Alameda County, California.'

"AND should the said note or any part thereof, or interest, remain unpaid after it should have been paid, according to the tenor of said note, I hereby irrevocably authorize said GEORGE F. DOWLING, or his assigns, to sell the above described property, or any part thereof, at public or private sale, with or without previous notice to me of such sale, and from the proceeds thereof to pay the principal, interest, charges, and costs of sale, and the balance, if any, to pay to me, or my representatives, upon demand. In case of the fall in the market value of any of said securities, I promise to reduce the amount of said note, or to increase the security in proportion to such decrease of value, and in default of which this note shall be considered due under the above stipulation. On the payment of the above note, interest and charges according to the term thereof, the above described securities shall be returned to me.

E. MARSHALL (Signed) "

On October 26, 1926, the Jacobson deed of trust, the

Marshall-Dowling deed of trust and the Marshall-Dowling assignment hereinbefore mentioned, were recorded.

From November 27, 1926 to March 9, 1927, mechanics' and materialmen's liens in amounts aggregating $2,900 were filed against the property.

On December 31, 1928, a sale was held under the Jacobson deed of trust. The trustee's deed to M. Jacobson was recorded January 10, 1929.

On January 28, 1929, M. Jacobson conveyed said real property to his daughter, Betty Lane. Said deed was recorded on the same day.

On March 1, 1929, said Betty Lane and her husband executed a deed of trust in the sum of $2,900 with Mercantile Mortgage Company as beneficiary. Said deed of trust was recorded on March 29, 1929.

By deed dated July 11, 1930, delivered in June, 1934 and recorded on October 13, 1934, Betty Lane and her husband conveyed the property to the Howells. From the time the Howells originally acquired the property until the time of trial, the Howells continued in possession of the property.

There was recorded on May 23, 1935, a deed of reconveyance dated May 1, 1935, which stated that the $2,900 loan payable to the Mercantile Mortgage Company was fully paid and satisfied.

There was recorded on May 23, 1935, a new deed of trust dated May 1, 1935, in the sum of $2,350 executed by the Howells to Mercantile Mortgage Company.

There was recorded on December 18, 1936, an assignment of the last mentioned deed of trust to the American Trust Company.

The Mercantile Mortgage Company at that time was owned and controlled by the American Trust Company.

There was recorded on December 12, 1936, a deed of reconveyance dated November 26, 1936, which stated that the note and deed of trust to Mercantile Trust Company, dated May 1, 1935, had been fully paid and satisfied.

There was recorded on December 12, 1936, a new deed of trust dated November 24, 1936, for $2,500 executed by the Howells to the American Trust Company. This is the deed of trust which the trial court found to be a first lien and the only encumbrance against the real property in question.

The last two deeds of trust mentioned were given in the process of refinancing previous loans. Practically no money changed hands. On the first refinancing there was a shortage

of $24.56 in the escrow money which the Howells made up, while on the second refinancing (done before the debt was due because the parties wanted to get the loan in condition to conform to the Federal Housing Administration requirements), an application had been made for an amount large enough to cover all expenses, and these being less than anticipated, a surplus of $136.02 was left, which was paid to the Howells.

The bank got no money out of either of the transactions and regardless of the recitals in the deeds of reconveyance the undisputed facts clearly indicate that these loans were both renewals of previously existing debts.

Appellants do not dispute the fraudulent procurement of the Marshall-Dowling note and deed of trust, but appellant George F. Dowling claims to be the holder thereof in due course to the extent of his pledgee's lien (citing *Adolph Ramish, Inc.* v. *Woodruff,* 2 Cal. (2d) 190 [40 P. (2d) 509, 96 A. L. R. 1146]), and that as such he succeeded to the same free and clear of all defects and free from all defenses which might be urged against Marshall.

He further claims that when the Howells reacquired the property, the Marshall-Dowling deed of trust immediately revived and attached to the property, although the note was outlawed and the property had been previously sold under the Jacobson trust deed.

He further claims that the Marshall-Dowling deed of trust is now a first lien on the real property, having become such upon the reconveyance of the admittedly valid deed of trust given by Betty Lane to the Mercantile Mortgage Company, dated March 1, 1929, and the reconveyance of the deed of trust to the Mercantile Trust Company dated May 1, 1935.

The trial court found that the Marshall-Dowling note and deed of trust were fraudulent and void, that appellant George F. Dowling was not the holder (in due course or otherwise) of the Marshall-Dowling note and deed of trust. It held that he had sufficient notice of probable defects in the security to put him on notice to make further inquiry, which he failed to do.

In addition to the facts already stated herein, bearing upon this question, the evidence shows that although he had had many previous dealings with Marshall and believed him to be both honest and financially responsible, he could not but observe that Marshall was willing to pay usurious interest (three and one-third per cent per month) for a short time loan

on the security. Dowling inspected the property on which was a freshly completed house, but made no inquiry as to the possible claims of mechanics or materialmen, nor did he obtain any search of title from a title company. He had bought several other second mortgages or deeds of trust outright from Marshall and this was the only one which he did not so buy but on which he merely loaned money at an usurious rate of interest with it as collateral security.

"To constitute notice of an infirmity in the instruments or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." (Civ. Code, § 3137.)

"Generally, mere knowledge of facts sufficient to put a prudent man on inquiry, or a mere suspicion of a defect, does not disqualify a purchaser from becoming a holder in due course unless he is guilty of bad faith, but they may evidence bad faith." (10 C. J. S. 818.)

Nor does the fact that a note is pledged as collateral security for an usurious loan of itself deprive the pledgee of the character of an innocent holder, where the usury statute of the state does not render usurious loans void. (10 C. J. S. 809.)

Negligence in failing to make inquiry in the face of suspicious circumstances, does not establish bad faith as a matter of law. (10 C. J. S. 819, § 324.)

"It has . . . been held that the purchase of a note before maturity for a grossly inadequate price with knowledge, upon inquiry previously made, of the maker's solvency, but without inquiry as to the consideration of the note, is a circumstance to be considered in determining whether the purchase was made in good faith and is of itself sufficient to arouse the suspicion of a prudent person and to put him upon inquiry as to the consideration." (*Witty* v. *Clinch*, 207 Cal. 779 [279 Pac. 797], quoting from *Jordan* v. *Grover*, 99 Cal. 194 [33 Pac. 889].)

It is true that the case last cited involves a sale rather than a pledge but there is some analogy which the trial court had a right to consider along with the facts and circumstances in the instant case in determining whether or not appellant George F. Dowling was guilty of bad faith in lending money on the securities involved, where he had opportunity to observe the eagerness of Marshall to obtain a loan at an usurious rate of interest and where, with all his experience, he inspected

the property and failed to make any inquiry as to the possibility of mechanics' or materialmen's liens nor any inquiry from the Howells as to the consideration.

While the evidence on this question is not plenary, we cannot say that there is no substantial evidence to support the trial court's finding.

By the terms of the assignment there was transferred to Dowling all of Marshall's "right, title and interest" in and to the deed of trust and note.

"It has been uniformly held that a conveyance of the right, title and interest of the grantor vests in the purchaser only what the grantor himself could claim. . . . This construction is in accord with the obvious meaning of the language. The grantee in such a deed necessarily takes only what the grantor then had, and subject to all defects and equities which could then have been asserted against the grantor." (*Lombardi* v. *Sinanides*, 71 Cal. App. 272, at 276 [235 Pac. 455].)

There is other substantial evidence to support the court's determination that George F. Dowling is not the holder of the note nor the beneficiary under the deed of trust. The pledge agreement is in writing and clearly limits the rights of the pledgee, in case of default, "to sell the above described property (the note, deed of trust and assignment). No sale of the pledged property was ever held. Appellant George F. Dowling simply usurped absolute ownership of the note and assumed himself to be the beneficiary under the deed of trust, and caused a substitution of trustees to be made, and published notice of default, all without legal authority.

The pledge agreement was similar to a simple escrow. If the debt was not paid at maturity, the papers were to be sold; if it was paid, all papers were to be returned to the borrower. No other remedy was provided. There never was an unqualified delivery of the documents to Dowling.

The authorities relied upon by appellant George F. Dowling concern pledges of the usual type where the pledgee has the right to collect the debt and assume the usual incidents of ownership.

It is not possible to place this transaction in the usual category of pledges without completely impairing the obligation of the contract of pledge itself.

It is now too late for appellant George F. Dowling to exercise his former rights, if any, under the pledge agreement. "A lien is extinguished by the lapse of time within which, under the provisions of the Code of Civil Procedure,

an action can be brought upon the principal obligation.'' (Civ. Code, § 2911.)

And even if this were not true, no purchaser at a sale of securities under the pledge agreement at this time could by any possibility become a holder in due course without notice of the defect in the securities. Thus appellant George F. Dowling now has no title to the securities and no interest which he can convey to any person which can create any title or interest adverse to respondents.

There is no doubt that, except for the fact that the Marshall-Dowling deed of trust was fraudulently procured, it would have reattached to the property when it was re-acquired by the Howells. The granting words in said instrument were ''grant, bargain, sell, convey and confirm.'' It also expressly conveyed after acquired title.

''Where a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title, or claim of title thereto, the same passes by operation of law to the grantee, or his successor.'' (Civ. Code, § 1106; *Jensen* v. *Duke*, 71 Cal. App. 210 [234 Pac. 876].)

''Title acquired by the mortgagor subsequent to the execution of the mortgage, inures to the mortgagee as security for the debt in like manner as if acquired before the execution.'' (Civ. Code, § 2930.)

And this would be true regardless of the running of the statute of limitations, or even bankruptcy. (25 Cal. Jur. 76; *Flack* v. *Boland*, 11 Cal. (2d) 103 [77 P. (2d) 1090]; *Grant* v. *Burr*, 54 Cal. 298; *Travelli* v. *Bowman*, 150 Cal. 587 [89 Pac. 347]; *Bank of Italy* v. *Bentley*, 217 Cal. 644 [20 P. (2d) 940]; *Sacramento Bank* v. *Murphy*, 158 Cal. 390 [115 Pac. 232].)

Nor except for the aforesaid fraud, would the debt have been extinguished. Neither the statute of limitations nor bankruptcy completely extinguishes a debt. They merely provide a defense against its enforcement. (*Puckhaver* v. *Henry*, 152 Cal. 419 [93 Pac. 114, 125 Am. St. Rep. 75, 14 Ann. Cas. 844]; *Barberi* v. *Rothchild*, 7 Cal. (2d) 537 [61 P. (2d) 760].)

''The rule in this state is that where a privity of relation exists the mortgagor cannot quiet title without paying his debt.'' (*Fontana Land Co.* v. *Laughlin*, 199 Cal. 625 [250 Pac. 669, 48 A. L. R. 1308].)

This rule, however, is based upon equitable principles and the reason for the rule ceases where the mortgage (or deed of trust) is fraudently procured.

And it is to be noted that there is no "privity of relation" between Dowling and any of the other parties to this action, for reasons previously stated herein.

As to the issues here involved, no distinction can be made between a mortgage and a deed of trust, except that the lien of a mortgage is extinguished by the running of the statute of limitations, while the power of sale in a deed of trust is not thereby lost. (*Jensen* v. *Duke, supra; Barberi* v. *Rothchild, supra; Sacramento Bank* v. *Murphy,* 158 Cal. 390 [115 Pac. 232].)

Appellants claim that when reconveyances were executed for the earlier deeds of trust to the Mercantile Mortgage Company, the debts secured thereby were actually paid and that the new deeds of trust were not renewals of the old ones. He relies largely upon the recitals of payment in the deeds of reconveyance and the fact that the renewals were for slightly different amounts, upon different terms of payment and rates of interest.

But the recitals in the deeds of reconveyance are not conclusive. (*McArthur* v. *Wellman,* 20 Cal. App. (2d) 379 [66 P. (2d) 1226].)

And small differences in the amount of the loan do not establish payment rather than renewal. (*Parker* v. *Tout,* 207 Cal. 590 [279 Pac. 431].)

The case of *Dingman* v. *Randall,* 12 Cal. 512, relied upon by appellant as authority on this question, is to be distinguished in that a substantial cash payment was made to the mortgagee, a former mortgagor was released and an additional new party executed the new mortgage.

All of the evidence in this case aside from the recitals in the deeds of reconveyance indicates that the primary purpose of the refinancing was by way of renewal.

Appellants further claim that because of the pleadings of respondent American Trust Company and the form of the findings and judgment, said respondent has elected to stand upon the alleged priority of its latest deed of trust, that such priority cannot be maintained and that it cannot apply the doctrine of equitable subrogation to establish said deed of trust as a prior lien over the earlier recorded Marshall-Dowling deed of trust.

There is a doctrine "closely akin to the doctrine of equitable subrogation" which has been stated in effect as follows:

Where the holder of the senior mortgage discharges it of record and contemporaneously takes a new mortgage, he is

not, in the absence of paramount equities, held to have subordinated his securities to an intervening lien, unless the circumstances of the transaction indicate this to have been his intention, or such intention on his part is shown by extrinsic evidence. (98 A. L. R. 843, note.)

This is particularly true where the senior mortgage is released in the mistaken belief that the new mortgage will be a first lien, and where there is no showing of negligence on the part of the mortgagee. (*Copp* v. *Millen,* 11 Cal. (2d) 122 [77 P. (2d) 1093].)

In the instant case as in the case last cited, the holder of the security had a search of the title made by a title company and, while the intervening lien was of record, the search failed to disclose it. The new deed of trust was also contemporaneously taken.

But under this doctrine, the prior senior mortgage or deed of trust, rather than the later, is accorded priority.

And since respondent American Trust Company failed to set up the earlier deed of trust to the Mercantile Mortgage Company but chose to rely on its latest deed of trust, and has caused findings to be made and judgment to be entered, declaring its later security to be the valid existing first lien, it cannot now change its position and seek to revive the earlier recorded senior deed of trust by applying the doctrine of equitable subrogation. (*Jack* v. *Wong Shee,* 33 Cal. App. (2d) 402 [92 P. (2d) 449].)

Furthermore, equity will enforce subrogation only when the action is brought within the time in which an action could have been brought to enforce the original obligation to which the right of subrogation is sought. (41 C. J. p. 583.)

In the instant case the statute of limitations had run against the note secured by the earlier Mercantile Mortgage Company's deed of trust before the action was commenced.

There is some apparent conflict in the California decisions on these doctrines which, however, can be reconciled upon reading all of the cases and considering them together.

There are cases which establish priority of a later renewal mortgage or deed of trust over an earlier intervening lien. (*United States Bldg. & Loan Assn.* v. *Salisbury,* 217 Cal. 35 [17 P. (2d) 140]; *McArthur* v. *Wellman,* 20 Cal. App. (2d) 379 [66 P. (2d) 1226]; *Schwartzler* v. *Lemas,* 12 Cal. (2d) 54 [82 P. (2d) 419].)

But in these reported cases there is no discussion of the question as to whether or not priority should be given to the

later or the earlier lien, or anything to show that the distinction was brought to the attention of the court.

There are also cases where subrogation or priority was allowed where the statute of limitations had run on the original obligation. (*McArthur* v. *Wellman, supra; Schwartzler* v. *Lemas, supra*.)

But in the decisions in these cases there is nothing to show that the statute of limitations was raised as a defense.

And in every reported case in which the distinctions in the application of the so-called doctrine of equitable subrogation are discussed, or where the defense of the statute of limitations is raised, the holding has been in harmony with this decision. (*Shaffer* v. *McCloskey*, 101 Cal. 576 36 Pac. 196] ; *Van Sandt* v. *Alvis*, 109 Cal. 165 [41 Pac. 1014, 50 Am. St. Rep. 25] ; *White* v. *Stevenson*, 144 Cal. 104 [77 Pac. 828] ; *Windt* v. *Covert*, 152 Cal. 350 (93 Pac. 67] ; *Simon Newman Co.* v. *Fink*, 206 Cal. 143 [273 Pac. 565] ; *Parker* v. *Tout*, 207 Cal. 590 [279 Pac. 431] ; *Fuller* v. *Harwell*, 126 Cal. App. 654 [15 P. (2d) 562] ; *United States Bldg. & Loan Assn.* v. *Salisbury*, 217 Cal. 35 [17 P. (2d) 140] ; *Flack* v. *Boland*, 11 Cal. (2d) 103 [77 P. (2d) 1090] ; *Copp* v. *Millen*, 11 Cal. (2d) 122 [77 P. (2d) 1093].)

But regardless of the fact that we have held with appellant on these latter questions, the later deed of trust of the Mercantile Trust Company must be held to be a valid first lien because the Marshall-Dowling deed of trust was fraudulent and void, except in the hands of a holder in due course, and we have held that appellant Dowling was not a holder in due course or otherwise, except for the limited purpose arising out of his written pledge agreement, under which he now has no rights which he can assert against respondents.

Appellants claim that some of the findings of the trial court were erroneous. The questions raised under this claim have been discussed and determined previously herein.

The judgment is affirmed.

A petition for a rehearing was denied July 3, 1942, and appellants' petition for a hearing by the Supreme Court was denied August 3, 1942.