[Civ. No. 13287.  First Dist., Div. Two.  June 27, 1947.]

GEORGE GOODMAN, Appellant, v. GLOBAL
INDUSTRIES, Respondent.

James H. Boyer for Appellant.

Walter E. Hettman and Simeon E. Sheffey for Respondent.

GOODELL, J.—The appellant sued in seven counts on behalf of himself and six of his assignors for $6,750 and interest. On December 21, 1944, when appellant negotiated with respondent, he was given the following letter:

"Mr. George Goodman and
Bill Sousa and
Jack Mayfield

In re: Global Industries Stock subscriptions and payments thereon

Gentlemen:

This is to certify that I am the comptroller of Global Industries, a California corporation, and that the funds you are turning over to Global Industries . . . will be credited on the books of the corporation for stock subscriptions receivable and that any person you have given a receipt for money included in the above sum and request same returned to them will be refunded by Global Industries immediately.

Yours very truly,<br>Lester O. Wisler<br>Comptroller, Global Industries

Written with the advice and consent of the president of Global Industries.''

The complaint alleges that the letter was given to induce appellant and his associates to subscribe for stock in the corporation and that they would not have paid in the money but for such promise. In each count it is alleged that in February, 1945, an offer was made to return the respective certificates of stock which had been issued, and a demand for the return of the money paid, which offers and demands were refused.

In each count it is alleged that respondent was incorporated on January 5, 1944 "and has not, at any time been, and is not now, engaged in the transaction of any lawful business'' also, that it owns and controls cash assets in excess of $40,000 and that its total liabilities, exclusive of money unpaid by appellant and his associates, do not exceed $5,000.

The court made findings in favor of the defendant corporation and from a judgment entered thereon this appeal was taken on the judgment roll alone.

The only question presented for decision is whether the case falls within the provisions of section 342 of the Civil Code. That section was enacted in 1931, as part of the new general corporation law, and amended in 1933. This discussion will be simplified by a review of the law leading up to its enactment.

"It was formerly, that is prior to 1929, the rule in California that a corporation was not authorized to purchase its own shares, with some minor exceptions such as collecting a debt or saving itself from loss." (*"Drafting a Modern Corporation Law"* by Henry Winthrop Ballantine, 19 Cal.L.Rev. 465, 479.)

The authorities held that contracts for the retaking by a corporation of its own shares were illegal and void as in violation of section 309 of the Civil Code which prohibited directors from dividing, withdrawing or paying to the stockholders any part of the capital stock, or from reducing or increasing the capital stock except as provided in the section (*Bank of San Luis Obispo* v. *Wickersham,* 99 Cal. 655, 661 [34 P. 444] ; *Vercoutere* v. *Golden State L. Co.,* 116 Cal. 410 [48 P. 375]).

In 1913, the case of *Schulte* v. *Boulevard Gardens Land Co.,* 164 Cal. 464 [129 P. 582, Ann.Cas. 1914B 1013, 44 L.R.A.N.S. 156] was decided, wherein the court pointed out that the plaintiff was "seeking to enforce a part of an entire contract under which the stock was originally issued to him" and held that "The right to return the stock and to receive the sum agreed to be paid upon such return was a material and indivisible part of the consideration upon which the plaintiff agreed to become a stockholder. . . . The sale to plaintiff was conditional. He never became a stockholder except subject to the qualification that he might return his shares upon the stipulated terms." For these reasons, and because the contract "was of the well recognized class, known as a contract of 'sale or return' . . ." the court held (in line with *Dickinson* v. *Zubiate Mining Co.,* 11 Cal.App. 656 [106 P. 123]) that the corporation was bound to take back its shares.

The Schulte case therefore reaffirmed this exception to the rule laid down by the earlier cases.

It is the appellant's position that the transaction now in litigation was a *conditional sale* only, and that this case, for the reasons given in the Schulte decision, is not subject to the provisions of section 342 of the Civil Code.

The rule based on section 309 (to which the Dickinson and Schulte cases were exceptions) was the result of case law and not of legislation. There was no statute on the subject which prescribed limitations or conditions (as does § 342) respecting the acquisition by a corporation of its own shares. The "minor exceptions" of which Professor Ballantine speaks in his article in 19 California Law Review 465, 479, were not found in the code, but had been written into the law by judicial decision (he there cites *Ralston* v. *Bank of California*, 112 Cal. 208 [44 P. 476] and *Mancini* v. *Patrizi*, 87 Cal.App. 435 [262 P. 375]).

In 1929, however, the Legislature (Stats. 1929, p. 1270) wrote into the enumeration of corporate powers contained in section 354 of the Civil Code, subdivision 7: "To admit stockholders or members, and to sell their stock or shares for the payment of assessments or installments; *provided, that a corporation shall not, in issuing shares or taking subscriptions therefor, agree to repurchase such shares, or give to the subscriber a right to surrender or resell the same to the corporation; . . .*" (Emphasis added.)

This amendment remained on the statute books for two years only. In 1931, when the new general corporation law was enacted the "Powers of Corporations" were put into what has since been section 341 of the Civil Code. In 1933, subdivision 5 thereof was amended to read as follows:

"(5) To purchase or otherwise acquire its own bonds, debentures or other evidences of its indebtedness or obligations, *and subject to the provisions of this title, to purchase or otherwise acquire its own shares.*" (Emphasis added.)

Thus for the first time the power of a corporation to acquire its own shares was declared in positive terms. The lawmakers were careful, however, to surround it with limitations. This they did in section 342. That section opens with the declaration that "A corporation may not purchase directly or indirectly any shares issued by it or by any corporation by which it is controlled, except as follows." The first seven subdivisions enumerate recognized instances where purchase is permitted. Appellant's case falls within none of them. Subdivision 8 then provides for all other cases as follows:

"(8) Subject to any limitations contained in its articles, *out of earned surplus.*

"Shares may be acquired either out of stated capital or from any surplus under subdivisions (1) to (5) inclusive of this section. Purchases from *earned surplus* under subdivi-

sion (8) of this section are not limited to cases authorized under other subdivisions of this section. . . .

"A corporation shall not purchase . . . shares of any class under this section in any case when there is reasonable ground for believing that the corporation is unable, or, by such purchase . . . will be rendered unable, to satisfy its debts and liabilities when they fall due, except such debts and liabilities as have been otherwise adequately provided for. . . ." (Emphasis added.)

▮ The contract sued on is essentially the same as that in the Schulte case. We are satisfied, nevertheless, that it falls squarely within the provisions of section 342. The words "directly or indirectly" indicate the intention to comprehend and include all types of repurchases however devised, and when the section is read in its entirety it is clear (see 6A Cal.Jur. p. 405, § 228), that it was designed to prohibit *any* purchase by a corporation of its own shares *except under conditions prescribed within the section's own four corners.* In the second report of the committee on revision, quoted at 6A California Jurisprudence 405, they say: "This section is aimed to change the unfortunate exception recognized in *Schulte* v. *Boulevard Gardens Land Co.,* 164 Cal. 464 [129 P. 582, Ann.Cas. 1914B 1013, 44 L.R.A.N.S. 156] . . . that a corporation may agree to give a subscriber the option of returning the shares and withdrawing his contribution to capital at his option. This is quite different from giving the corporation the option to redeem. If such an obligation were to be allowed, the enforcement of it should be made subject to the rights of creditors and of other shareholders, and it should be carried on the books and on all financial statements as a contingent liability. An agreement by which the subscriber is to be released from liability on his subscription may operate as a fraud upon other subscribers and upon creditors." Again, at 6A California Jurisprudence, page 448, section 259, the rule of the Schulte case is discussed as follows: *"Former doctrine as to repurchase agreements.* Prior to 1931 there was an established doctrine that an agreement to repurchase which was a part of the consideration of the sale by the corporation was binding; and the present laws were undoubtedly intended to do away with that doctrine."

The subject is fully discussed in California Corporation Laws (1938 ed.) by Ballantine and Sterling at page 172 et seq. Professor Ballantine was the draftsman of the General

Corporation Law of 1931, of which sections 341 and 342 are important parts. At page 173, section 189, of that work it is said, "It is the theory of this section [342, subd. 8] that as a general rule the purchase by a corporation of its own shares should not be allowed except out of earned surplus which would be available for distribution as cash dividends. The withdrawal of assets by a shareholder upon a sale or surrender of his shares has the same effect upon creditors as the payment of a dividend." The authors then give the instances where corporations may purchase their own shares, namely, "the collection or compromise of a claim; forfeiture of shares; compensation of dissenting shareholders; agreements with employees; elimination of fractional shares; purchase of redeemable preferred shares and conversion of shares" which instances are crystallized into the first seven subdivisions of section 342.

█ It follows that an action such as this cannot be successfully maintained without proof that the case meets the conditions prescribed by subdivision 8 of section 342, namely, (1) that an earned surplus exists out of which the stockholder may be paid, and (2) that there is no reasonable ground to believe that the corporation cannot satisfy its debts and liabilities. With respect to these conditions the court found that the corporation on the "21st day of December, 1944, and at all times subsequent thereto, has not had any earned or paid-in surplus, or net profit, and that said . . . corporation cannot purchase . . . said shares . . . or refund the purchase money . . . because by such purchase, . . . said . . . corporation would be rendered unable to satisfy its debts and liabilities when they fall due, and that such repurchase and refund would result in a reduction of the capital of said . . . corporation, which would violate the rights of creditors and other stockholders, . . . ."

█ Indeed, there is no allegation in the complaint touching earned surplus. (See *Bates* v. *Daley's Incorporated*, 5 Cal.App.2d 95, 104 [42 P.2d 706].)

It is true there is an allegation that the corporation had cash assets of $40,000 and liabilities not exceeding $5,000, but that is not an allegation of an earned surplus. The court found the latter allegation to be true as of the filing of suit, but it also found that at the time of trial "and a long time prior thereto, defendant corporation, as shown by financial statements and other evidence in the operation of its business, had lost large sums of money and its liabilities to creditors at

said time and times were in excess of its assets, . . .; that such refunding would thereby reduce the assets of said defendant . . . in violation of Section 342. . . .''

Appellant contends that his rights should be determined as of the time when suit was filed, supporting that contention by authorities on the general point as to which, there can be no question. In other words appellant claims that the corporation's financial condition when action is brought, rather than at the time of trial, should control. In view of the fact that appellant neither alleged nor proved the existence of an earned surplus *at any time,* the question is immaterial. However, on this point Ballantine and Sterling, in their work cited above, at page 174, have this to say: ''Under Section 342 Civil Code a corporation may bind itself to repurchase its shares, but only out of earned surplus, or from employees, or by way of conversion or in case of shares subject to redemption. If the earned surplus from which purchase is allowed to be made under Section 342(8), Civil Code, shrinks to a deficit at the time of performance, the agreement becomes unenforceable against the corporation. A corporation may make a contract to purchase its own shares at a time when it has an earned surplus justifying it, but if, before the time the seller gets around to the performance of the contract, the surplus has vanished by losses or shrinkage in values of assets, the purchase cannot be completed.''

Subdivision 6 of section 341, Civil Code, gives to corporations the power ''To assume any obligations, enter into any contracts or do any acts incidental to the transaction of its business or to *the issue or sale of its securities,* or expedient for the attainment of its corporate purposes''; (emphasis added). Appellant contends that because his contract is one of *conditional sale* only, his case comes within that provision, and not within section 342. We have already expressed the opinion that 342 covers *all* cases of repurchase. Above and beyond that is the fact that subdivision 5 of section 341 reads: ''*subject to the provision of this title, to purchase or otherwise acquire its own shares.*'' There you have a specific reference to the acquisition of a corporation's own shares, and the ''provisions of this title'' are found in the next succeeding section, 342. As we have seen, those provisions comprehensively cover the subject, and would seem to override any such general expression as that found in subdivision 6 of section 341.

Whether the contract herein be called a conditional sale contract or a ''contract of 'sale or return' '' (Schulte case,

p. 469) or an option, the fact remains that it was a contract whereby the corporation attempted to bind itself to take back its own stock if the stockholders became dissatisfied with their investment, and to return to them their money. Appellant concedes that "had defendant refunded said moneys, as it had agreed to do, it would have been entitled to the return of any . . . certificates of stock" it had issued. We have conceded that appellant's case is substantially the same as Schulte's case, but we have also seen that the enactment of section 342 disposed of the rule of the Schulte case, which, after all, was an exception to the general rule. The finding of the trial court that the case falls within section 342 of the Civil Code was correct.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.