BOARD OF EDUCATION OF INDEPENDENT SCHOOL DIST. NO. 12, TEXAS COUNTY, Okl. v. INSURANCE CO. OF NORTH AMERICA (Texas Co., third party defendant).

Civ. No. 4574.

United States District Court.
W. D. Oklahoma.
May 28, 1951.

Rizley, Tryon & Sweet, Guymon, Okl., and Twyford & Smith, Oklahoma City, Okl., for plaintiff.

Walter Hanson (of Rittenhouse, Hanson, Evans & Turner), of Oklahoma City, Okl., for defendant and third-party plaintiff.

Fisher Ames, Oklahoma City, Okl., for third-party defendant.

VAUGHT, Chief Judge.

The Board of Education of Independent School District No. 12, of Texas County, Oklahoma, hereinafter referred to as "Board of Education," brings this action against the Insurance Company of North America, a Pennsylvania corporation, hereinafter referred to as "Insurance Company," seeking to recover the sum of $7653.63 for loss sustained to its school building by reason of damages caused by an explosion in the vicinity of the building on the 7th day of January, 1947, which loss the Board of Education alleges was covered by a policy issued by the Insurance Company, which was in force and effect on the date of the explosion.

The Insurance Company has filed a third-party complaint against The Texas Company, a Delaware corporation, in which it alleges that if it is called upon to respond in damages to the plaintiff, it is then entitled to subrogate to the plaintiff's cause of action and to recover whatever it is called upon to pay, from The Texas Company, which it alleges caused the damage if any to the plaintiff.

The Board of Education claims that it suffered damages to its building by virtue of an explosion set off in the vicinity of its building in certain seismograph operations conducted by a crew of workmen acting for and on behalf of The Texas Company. The Insurance Company and The Texas Company both deny that the damage to the building was caused by the explosion, but contend that whatever damage has occurred to said building, if any, has been caused by settling of the building, or other causes not covered by said insurance policy.

The Insurance Company pleads as a defense the statute of limitations. The Texas Company also pleads the statute of limitations against the plaintiff, and against the Insurance Company, as a third-party plaintiff, for the reason that by its conduct the Insurance Company is not entitled to any right of subrogation against it.

The first question to be determined is one of fact. The Texas Company, on the date of the explosion, was engaged in seismograph work 917 feet from the school building. At about 10:30 A.M. of said date, while school was in session, an explosion of 125 pounds of dynamite was set off by The Texas Company. There is no controversy as to whether the insurance policy covered the loss sustained, if it was caused by the explosion. Thus it must first be determined whether or not the plaintiff has sustained the burden to establish by a fair preponderance of the evidence that the damage to the building was caused by the explosion. The undisputed evidence discloses some very interesting and pertinent facts. The dynamite charge was a heavy one and the resulting explosion was a heavy blast. It caused considerable commotion in the vicinity that felt it. First we have the testimony of those who were in the school building at the time of the explosion: students Ronald Plunk, fifteen years old, Dean Mendenhall, sixteen years old, and Donnie Hook, nineteen years old; Mrs. Selma Stearm, who was assisting in the lunchroom, and Ralph Rich, the superintendent of the school. These witnesses agreed that the explosion shook the building, making the cooking utensils in the lunchroom rattle; that the impact of the explosion was rather violent and caused them great uneasiness. One witness stated that the piano moved and the floors shook; that the windows shook and rattled. Another witness stated that "the whole room seemed to quiver and shake." Superintendent Rich testified he believed the boiler had blown up, sounded the alarm and saw that the pupils vacated the building. Testimony substantially corroborating these witnesses was given by Mrs. R. H. Sellars, who was in a cafe a half mile beyond the school building. She stated she was frightened by the explosion; that she thought the elevator had "blown up;" that the building in which the cafe was situated "quivered" to such an extent that glasses were shaken off the shelf and broken, and that she ran out of the building. Carl Stearm, a mechanic in a garage located about a quarter of a mile south of the school building, testified that at the time of the explosion the garage building shook and he thought a tire that he had just inflated had blown up. C. E. Plunk, who was in the office of the elevator of the Valley Grain Company at the time of the explosion, stated that the windows rattled, the building shook, and that he ran out of the building, thinking that it was the elevator. All of this evidence is uncontradicted.

That the school building is in a damaged state is also undisputed. The day following the explosion, the janitor reported to the superintendent that he noticed cracks in the floors in the upper rooms. Upon investigation the superintendent found fresh cracks in the floors of three rooms. The asphalt tile floor coverings showed the floors had bulged and that the floors were cracked. The superintendent testified that he had been in these rooms about two days prior to the explosion and had not observed any cracks or bulged places; that he then made an extensive examination of the building and discovered cracks in the foundation in the southeast corner of the building that he had never observed before; that some of the students reported that bulges had appeared in the gymnasium floor and upon examination he found this to be true. He advised the agent of the insurer within a day or so thereafter and through the agent,

the loss claimed was reported to the Insurance Company. Later an adjuster contacted the plaintiff and had the plaintiff submit its proof of loss. After considerable time, which we will review later, the Insurance Company denied liability and this action was instituted to recover.

■ As stated above the defendant contends that if any damage was suffered to the building, it was not caused by the explosion but was the result of settling of the building, either due to faulty construction or improper maintenance. Testimony of experts and men of experience was offered by the parties to establish their contentions as to what caused the cracks and damage to the building, witnesses for the plaintiff stating that in their opinion the damage was caused by the explosion and witnesses for the defendant stating that in their opinion it was not caused by the explosion but followed the pattern caused by settling. The evidence discloses there were some cracks prior to the explosion that might be due to the settling of the building, but the preponderance of the evidence discloses that the great bulk of the cracks and deterioration became evident immediately after the explosion and has progressively continued. This leads to the conclusion that the damage to the building from which it suffered immediately following the explosion was caused by the explosion.

The court is not unmindful of the testimony of the experts and has profound respect for their opinion. The testimony of the defendant's experts is that the force of an explosion, such as involved here, could have two vibrations, one through the air and another through the structure of the earth, and that if the vibration is in the air, then it would cause the windows to shatter, but if the vibration is through the structure of the earth it might cause damage to foundations of buildings if the charge of the blast was of enough force. But that in this situation, taking into consideration the structure of the earth, the nature of the explosion, its depth and distance from the school building, in their opinion it would be impossible for the cracks in the building to have been caused by the explosion. They also base their opinion upon the character of the cracks which in their judgment discloses they were caused from settling of the building by virtue of either faulty construction or improper maintenance. Notwithstanding the testimony of experts that a situation is impossible of occurrence, frequently the impossible does occur. Upon a careful analysis of the testimony, one thing is clear, on January 7, 1947 prior to the explosion, the building was in an apparently sound condition. The day following the explosion, the evidence discloses that it was discovered to be in a damaged condition with apparently new and fresh cracks, floor upheaval, et cetera, and the condition of the building rapidly deteriorated thereafter. The only logical conclusion must be that the damage was caused by the explosion. As to the extent of damages, there seems to be no dispute of any consequence.

Having thus determined that the loss was occasioned by the explosion, we now turn to the questions raised as to the statute of limitations governing the cause of action and the issues raised between the Insurance Company and The Texas Company.

■ Is the plaintiff's cause of action barred by the statute of limitations? The policy issued by the Insurance Company contained the following provision: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."

The explosion occurred January 7, 1947. Suit to recover was filed on August 25, 1949. More than twelve months having elapsed between the inception of the loss and the commencement of the action to recover, the limitation clause would be in effect unless it was expressly or impliedly waived by the Insurance Company. The evidence discloses that the Insurance Company procured proof of loss and continued to consider the adjustment of the loss until after the twelve month period had elapsed. Thus, under the great weight of authority, the limitation clause was waived by the

conduct of the Insurance Company, and when once waived it cannot be revived.

■ The Oklahoma Supreme Court settled the proposition in Prudential Fire Insurance Company v. Trave-Taylor Company, 194 Okl. 394, 152 P.2d 273, 275, wherein it held: "Where an insurer does not deny liability under a policy but requests time in which to have experts examine the property alleged to have been damaged in order to ascertain the extent of the damage done thereto and consumes approximately the entire period in which institution of an action on the policy is required to be instituted the insurer will be held to have waived the limitation provision of the policy for a reasonable time after denial of the liability thereunder."

And quoting from the body of the opinion:

"* * * it is equally well settled that the provision is one for the benefit of the insurer and therefore one which can be waived by it and which will be deemed to have been waived where it would be inequitable to permit it to be plead. (Citing numerous authorities.)

"Waiver is the intentional relinquishment of a known right or conduct which warrants an inference of such intent * * * and where it is properly plead and there is evidence to support the plea so made it becomes a question of fact for the jury. * * *."

The next question is one of law between the Insurance Company and The Texas Company. The Texas Company raises two points: First, that the statute of limitations has run in which action can be brought against it by the Board of Education, and second, that the conduct of the Insurance Company in the manner and delay in attempting to adjust the loss was such as to make it inequitable to permit subrogation as to it.

■ In Fruehauf Trailer Company v. Gilmore, 10 Cir., 167 F.2d 324, 330, the question was considered by the court wherein it held:

"Since the action was for indemnity or restitution, the partners' cause of action did not arise until they discharged the claim for attorney's fees, and the cause of action of the Insurance Company did not arise until it paid the Walker judgment.

"Fruehauf contends that the third paragraph of § 95, 12 Okl.St.Ann., applies and that the limitation period was two years. The partners and the Insurance Company assert that the second paragraph of § 95, supra, applies and that the period of limitation was three years. Since the action was brought within two years after the Insurance Company paid the judgment and the partners paid the claim for attorney's fees, it was not barred under either of such paragraphs of § 95, supra."

Here the cause of action in favor of the Insurance Company arises against The Texas Company upon the determination that The Texas Company was liable in damages to the Board of Education, and the statute then would begin to run insofar as its right of subrogation is concerned.

■ The second contention of The Texas Company presents a more serious question. In considering this contention it must be determined when and how the Insurance Company acquires the right of subrogation and of what that right consists. The right is a creature of statute, 36 Okl.St.Ann. § 244.1, and is by that section made a part of the insurance policy. The subrogation clause reads: "This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company."

It will be observed that the statute grants to the Insurance Company an assignment of the cause of action the plaintiff had upon payment of the loss. Let us assume that the Insurance Company was required to, and did, pay the loss within the statutory period in which the plaintiff could bring its action—two years under the Oklahoma statute. Then there could be no question but that it would be subrogated to the rights of the plaintiff. But can the Insurance Company by its acts and conduct in adjusting the loss beyond that statutory period, toll the statute in its favor against the party who caused the loss? Or is it governed by the position in which it finds itself at the

time the right of subrogation arises? It apparently is a matter of equity, and the rule of equity must apply. "Equity aids the vigilant and not those who slumber on their rights." If at the time the liability is determined the Insurance Company by its acts and conduct in permitting the statute to run in favor of The Texas Company before placing itself in a position to assert its claim against The Texas Company, it should not be permitted now to assert that claim, and would be barred by the statute of limitations.

Here the loss occurred January 7, 1947. Two years and seven months elapsed before the Board of Education filed its suit, which delay was occasioned by the acts and conduct of the Insurance Company. At the time suit was filed, the Board of Education could not have maintained a suit against The Texas Company because suit would have been barred by the two-year statute.

The court is in accord with the doctrine laid down in Howell v. Dowling, 52 Cal. App.2d 487, 126 P.2d 630, 636, where the California court said:

"Furthermore, equity will enforce subrogation only when the action is brought within the time in which an action could have been brought to enforce the original obligation to which the right of subrogation is sought. 41 C.J. p. 583.

"In the instant case the statute of limitations had run against the note secured by the earlier Mercantile Mortgage Company's deed of trust before the action was commenced.

"There is some apparent conflict in the California decisions on these doctrines which, however, can be reconciled upon reading all of the cases and considering them together.

\* \* \* \* \* \*

"But in the decisions in these cases there is nothing to show that the statute of limitations was raised as a defense.

"And in every reported case in which the distinctions in the application of the so-called doctrine of equitable subrogation are discussed, or where the defense of the statute of limitations is raised, the holding has been in harmony with this decision. (Citing numerous authorities.)"

It is the opinion of this court that the Board of Education is entitled to recover from the Insurance Company the amount of $7653.63 and its costs; that the Insurance Company is not entitled to recover against The Texas Company.

Findings of fact, conclusions of law and a form of judgment, consistent with this opinion, may be submitted within fifteen days from this date.