### In re MATHEWS CONST. CO.

United States District Court
S. D. California, Central Division.
April 27, 1954.

, Bailie, Turner & Lake, Los Angeles, Cal., for James R. Mathews, petitioner on review.

Craig, Weller & Laugharn, Los Angeles, Cal., for trustee.

BYRNE, District Judge.

James R. Mathews seeks the review of an order made by the referee denying petitioner's assertion of an equitable lien on certain assets of the bankrupt estate.

On March 31, 1949, the petitioner James R. Mathews and Robert Peterson were the sole stockholders of Mathews Construction Company. They were also the only active directors of the corporation, although there was a third director named Sherlock C. Hackley, who never attended any directors' meetings after the original meeting and took no part in the operation or control of the corporation.

At a board of directors meeting attended by Mathews and Peterson on March 31, 1949, the corporation was authorized to repurchase 100 shares of its authorized stock from James R. Mathews for and in consideration of the transfer to him out of the corporation's earned surplus of certain realty, personalty and cash, and for the further consideration of the execution by the corporation to him of a promissory note for $5,000 due one year after date with interest at 6% per annum. All of the purchase consideration, excepting the $5,000 represented by the promissory note, was transferred and paid concurrently with the execution of the agreement of sale. The agreement of sale, dated March 31, 1949, provided that none of the corporation's remaining equipment would be sold without payment to James R. Mathews of at least one-half of the net amount received from such sale, such payment to be credited on the $5,000 note.

As a further consideration for the agreement of March 31, 1949, an outstanding promissory note of the corporation, due James R. Mathews, in the amount of $11,000, was renewed for an additional year, and the provision with respect to the sale of the corporation's equipment was also made applicable to the $11,000 indebtedness.

A voluntary petition in bankruptcy was filed by the corporation on December 15, 1952, and thereafter it was adjudicated a bankrupt. The petitioner James R. Mathews filed his verified proof of secured debt in the sum of $15,046, being $3,400 balance due on the $5,000 note given as part of the purchase price of petitioner's stock in the corporation; $11,000 principal sum due on the renewed note referred to in the agreement of March 31, 1949; interest on the notes in the sum of $396, and $250 due Mathews from the corporation as rental of real estate. With respect to the $3,400 and $11,000 items, Mathews claimed an equitable lien on one-half of the selling price of the equipment owned by the bankrupt at the time of the filing of the petition in bankruptcy.

■■ The referee concluded that the agreement of March 31, 1949, which the petitioner relies upon to establish his lien, was void because it was not authorized by a board of directors of not less than three members as required by Sec-

tion 800 of the California Corporations Code. I cannot agree with this reasoning. The record shows that in addition to Mathews and Peterson, Hackley was a member of the board of directors from the time the corporation was organized. Section 805 of the California Corporations Code provides: "Directors named in the articles shall hold office until the next annual meeting of shareholders *and* until their successors are elected * *." Although inactive for years, Hackley remained a director as he was named in the articles and a successor was never elected.

■ The action of the board of directors was ineffective, not because it was a board of less than three members, but because of failure to give notice of the special meeting to Hackley as required by California Corporations Code, § 813.

While Mathews and Peterson were not properly assembled as a board of directors with power to adopt a resolution authorizing the execution of the agreement of sale, it does not necessarily follow that the agreement is invalid.

■■ Ordinarily a corporation may act only through its board of directors, but where all of the shareholders consent to or acquiesce in action taken by officers with ostensible authority, the transaction is binding upon the corporation.[1] At the time of the March 31, 1949, directors' meeting Mathews and Peterson owned all of the shares of the corporation. At the time of the special meeting of April 14, 1949, when a resolution was adopted "authorizing, ratifying and confirming" the contract of repurchase of Mathews' stock, Peterson was the sole shareholder of the corporation and participated in the ratification. It follows that the agreement, unless invalid for some other reason, is binding against the corporation and the trustee in bankruptcy.

■■ An agreement by a corporation to repurchase stock, though valid at the time entered into, becomes invalid if, at the time of payment, there is no surplus.[2] It is manifest that the $3,400 claim for the unpaid purchase price of the stock cannot be enforced. Bankruptcy having intervened, obviously there can be no surplus from which payment for repurchased stock may be made.

With respect to the $11,000 claim, the critical question involves the lien phase of the claim. There is no dispute as to the indebtedness. The controversy relates to the claim of an equitable lien as security.

To establish his claim of lien the petitioner relies upon the agreement of March 31, 1949, and the provision, "The Corporation agrees that so long as said note of $11,000 is outstanding and unpaid, none of the equipment which it retains * * * shall be sold without payment to shareholder (petitioner) of at least one-half of the net amount received through such sale, such sale (sic) to be credited by shareholder against said note."

■ If the agreement of March 31, 1949, were construed as creating a lien *on the equipment* it would be void as against the trustee in bankruptcy who stands in the shoes of the creditors because it was not executed or recorded in accordance with the requirements of Section 2957 of the California Civil Code relating to the execution and recordation of chattel mortgages.

To counteract any adverse effect the California statutes enacted to protect good faith creditors from secret liens might have on his claim, the petitioner contends that the lien is not on the equipment, but on the *proceeds from the sale of the equipment*. It would be anomalous to say that the commendable legislative philosophy proscribing secret

---

1. Pacific State Bank v. Coats, 9 Cir., 1913, 205 F. 618; Meyers v. El Tejon Oil & Refining Co., 1946, 29 Cal.2d 184, 174 P.2d 1; Brainard v. De La Montanya, 1941, 18 Cal.2d 502, 116 P.2d 66; Bal-lantine and Sterling's Calif. Corp. Law (1949 Ed.) p. 78.

2. Goodman v. Global Industries, 1947, 80 Cal.App.2d 583, 182 P.2d 300; California Corporations Code, § 1705 et seq.

liens could be thwarted and rendered ineffective by the expedient of treating the sales value of personal property as distinct and separate from the property itself.

■ A lien is a charge imposed upon specific property. California Civil Code, § 2872. There can be no lien on the proceeds from the sale of equipment until the sale has occurred at which time the right to the proceeds comes into existence. Until the sale the market value of the equipment cannot be regarded as property separate and apart from the equipment itself. To accept the petitioner's view would be to say that the lien of a chattel mortgage on equipment does not include its sale value in the market place.

The petitioner places great reliance upon the case of Cannon v. Chapman, 1938, 24 Cal.App.2d 448, 75 P.2d 522. The case is clearly distinguishable. Chapman *sold* a crop of oranges to the Riverside Citrus Association, assigned the proceeds of the sale to a third party as collateral security for a loan of $400 and ordered the Riverside Citrus Association to pay the money to the third party. This order to the debtor (Riverside) by the creditor (Chapman) to pay the debt (proceeds of the sale) to the third party operated as an equitable assignment of the debt.[3]

■ In the instant case *there was no debt to assign.* If the corporation had sold the equipment, its right to the proceeds would have been a debt or chose in action which could have been assigned to the petitioner as security. There being no sale the property retained by the corporation was the equipment, itself, which included its sale value in the market place. Any attempt to affix a lien upon this property would have to conform to the California law pertaining to chattel mortgages.

The referee's order is affirmed. Counsel for the respondent will prepare and submit an appropriate order for signature in accordance with local Rule 7.

3. Pope v. Huth, 14 Cal. 404.