### In the Matter of NATIONAL TILE & TERRAZZO CO., INC., Bankrupt.

### Edward M. WALSH, Trustee, Respondent,

### v.

### Josephine PATERNA, Appellant.

### No. 74–1549.

United States Court of Appeals, Ninth Circuit.

April 21, 1976.

As Amended Aug. 3, 1976.

Henry Gross (argued), San Francisco, Cal., for appellant.

Harvey Hoffman (argued), of Hoffman & Kelly, San Francisco, Cal., for appellee.

### OPINION

Before CHOY and GOODWIN, Circuit Judges, and REAL,* District Judge.

\* Honorable Manuel L. Real, District Judge, Central District of California, sitting by designation.

CHOY, Circuit Judge:

Appellant Paterna, on December 27, 1967 owned 600 shares of the common stock of National Tile and Terrazzo Co., Inc., a California corporation (hereafter National).

Appellant sold her shares to the Corporation receiving $3,000 in cash and a note for $36,000.00 payable at the rate of $500.00 per month and bearing interest at the rate of 4% per annum. The note was secured by a deed of trust upon National's real property designated as 198 Mississippi Street, San Francisco, California. At the time of the transaction, the Corporation's earned surplus exceeded the purchase price of $39,000 and was apparently sufficient to satisfy the requirements of California Corporations Code § 1708.[1]

Payments were thereafter undertaken by the Corporation and made regularly until May 20, 1971.

On June 18, 1971 National filed a voluntary petition in bankruptcy. Adjudicated on the same date, the Corporation was then without earned surplus and was unable to pay its debts and obligations as they came due. Paterna was still owed $20,351.66, with interest from May 20, 1971. There were insufficient assets in the bankrupt's estate to pay in full the claims of all creditors.

Appellant filed her claim of lien in the bankruptcy which was denied by the bankruptcy judge. In affirming the denial of appellant's lien claim the district court relied upon the holding in In re Belmetals

*Mfg. Co., Inc.*, 299 F.Supp. 1290 (N.D.Cal. 1969), *aff'd sub nom. Eranosian v. England*, 437 F.2d 1355 (9th Cir. 1970).

We reverse and remand.

### Enforceability of the Note

California Corporations Code § 1705 prohibits a corporation from purchasing its own shares except as authorized in §§ 1706 or 1707. The provision cited to sanction the purchase of Paterna's shares was § 1707(c), which permits such an acquisition out of the earned surplus of the corporation. After National went bankrupt it had no earned surplus out of which to pay the amounts remaining due under the note. Under California law, this insolvency made the note unenforceable against the rights of other creditors, even though the corporation had been solvent when the transaction was entered into. *McConnell v. Estate of Butler*, 402 F.2d 362 (9th Cir. 1968); *Belmetals*, 299 F.Supp. at 1296. Paterna concedes that under this doctrine her note is unenforceable.[2]

### Enforceability of the Lien

Paterna argues, however, that she nonetheless has a valid claim based on her deed of trust. *Belmetals* and the other precedents discussed therein did not deal with a secured debt.[3] Whether the lien survives after the note has lost its enforceability under these particular circumstances is apparently a question of first impression under California law.

---

1. On December 31, 1967, after the purchase of the shares and deduction of the purchase price from the earned surplus as required by California Corporations Code § 1709, National still had an earned surplus of $20,563.14. There has been no finding that it lacked sufficient surplus to satisfy the requirements of California Corporations Code § 1708, which prohibits a corporation's purchase of its own shares if there is reasonable ground for believing that such purchase will render it unable to satisfy its debts and liabilities. We imply no finding of our own as to whether § 1708 was met or violated.

2. It is irrelevant, therefore, whether the stock purchase contract is characterized as executed

(fully performed by the transfer of shares in exchange for the note) or executory (not completed until payment for the shares, made in installments under the note, is finally made in full.) Either way, the note itself is not enforceable.

3. There was a purported lien in *In re Mathews Construction Co.*, 120 F.Supp. 818 (S.D.Cal. 1954), but it was ineffective because it was not properly executed or recorded, and the court did not discuss the possibility of the lien surviving the unenforceable note.

No challenge to the validity of Paterna's lien apart from the general attack on the debt's unenforceability has been suggested to us.

There are California decisions that contain language to the effect that a lien cannot be effective if the underlying debt is invalid. In *Coon v. Shry,* 209 Cal. 612, 615, 289 P. 815, 816 (1930), for example, it was stated:

> [T]he mortgage must stand or fall with the note. It is well settled in California that a mortgage or mortgage lien is a mere incident of the debt or obligation which it is given to secure. . . . A mortgage in California has no existence independent of the thing secured by it.

Similarly, *Fleming v. Kagan,* 189 Cal. App.2d 791, 796, 11 Cal.Rptr. 737 (1961); *Trowbridge v. Love,* 58 Cal.App.2d 746, 137 P.2d 890 (1943); *see* California Civil Code § 2909. We note, however, that *Coon* and *Fleming* involved underlying debts that were invalid from their inception. In *Coon,* the purported note was held to be a "mere unexecuted voluntary promise, unsupported by consideration, to make a gift in the future." 209 Cal. at 616, 289 P. at 816. The debt in *Fleming* was found to have been fraudulently induced. In *Trowbridge* there was originally a valid note, with a deed of trust, but the debt was forgiven by the creditor in her will and the court ruled that the discharge covered the lien as well, finding no reason to treat it separately.

When an initially valid debt not discharged by the creditor has become unenforceable because of the statute of limitations, however, the lien does not lose all of its vitality. It has been held that though the underlying debt was unenforceable and the lien could not be enforced directly, title to the property in question could not be quieted against the holder of the deed of trust without payment of the debt. *Howell v. Dowling,* 52 Cal.App.2d 487, 496, 126 P.2d 630, 635 (1942); see *Puckhaber v. Henry,* 152 Cal. 419, 93 P. 114, 116 (1907).

The situation at hand falls somewhere between these cases. The transaction here was not invalid from the first: National's earned surplus exceeded the purchase price of the stock. Nor was the debt excused by the creditor. On the other hand, as the appellee accurately contends, the statute of limitations is a merely procedural principle, while the unenforceability of Paterna's note results from a substantive rule of California law relating to the nature of the particular transaction.

In interpreting and applying state law we ordinarily defer to the judgment of the district court, located in that state. The opinion of the district court here, however, relied simply on *Belmetals* and *Trowbridge,* with no further discussion. As we have noted, *Belmetals* did not involve a lien, so it did not consider the issue with which we are faced here: the lien's effectiveness given the corporate insolvency and the note's unenforceability. The same is true for our decision in *McConnell,* not cited by the district court. *Trowbridge* concerns a lien, but in a factual context significantly dissimilar to this one. These precedents appear to us to be inadequate to answer the immediate question and cannot by themselves support the decision of the district court. We must, therefore, express our own view that the lien should not be made ineffective by reason of the insolvency and the failure of the underlying note. There are two significant factual circumstances which contribute to our reaching this conclusion. First, the Corporation had a sufficient earned surplus to cover the entire purchase price at the time of the stock transfer and could legally have paid the whole amount in cash then.[4] Second, there appears to be no fraudulent dealing here. Paterna sold all of her shares, retaining no equity interest in the Corporation. The transaction took place at a time when National was apparently healthy. The bankruptcy proceeding was not instituted until three and one-half years later, and according to its financial statements, serious deterioration of the Corporation's earned surplus did not set in until at least two years later.

---

4. This was apparently not the case in *Belmetals.* Nominal compliance with the statutory requirement there was achieved only by a purported sale and repurchase of corporate property which was found to be a deliberate attempt to circumvent the statute. 299 F.2d at 1292–93.

According to the California courts, the pertinent statutes were "enacted for the benefit of the corporation as a whole, its creditors and stockholders other than the participating stockholder." *Tiedje v. Aluminum Taper Milling Co.,* 46 Cal.2d 450, 455, 296 P.2d 554, 557 (1956); *England v. Christensen,* 243 Cal.App.2d 413, 423, 52 Cal. Rptr. 402 (1966). It seems evident to us that holding liens such as Paterna's ineffective would be disadvantageous to the corporation concerned and to its other stockholders. If the selling stockholder could not rely upon the lien to insure payment of the remaining amount due, he would more likely demand a complete payment at the time of the stock sale. The corporation would thus be forced to deplete its cash position or to borrow funds from a third-party creditor, which would involve interest and transaction costs and which would expend some of the company's potential credit line. Alternatively, the purchase could not be made; but there are often legitimate reasons for a corporation to purchase its stock—the statutes do, after all, authorize some such purchases—and it is detrimental to the company and its other stockholders to so tie its hands. They should not be so tied unless there is some countervailing reason.

Protection of the corporation's creditors is said to be that countervailing reason, and it is obviously the motivation for holding the note to be unenforceable. But we do not believe that that justifies invalidating a lien in circumstances such as we have here. To be enforced the lien must have been recorded, and subsequent creditors are bound by law to have knowledge of the outstanding corporate encumbrance. They are to consider it in making their credit and interest-rate decisions. Moreover, we note that had the Corporation paid Paterna in full by raising funds by a secured loan from a third-party creditor, that lien would be valid, although the effect on the other creditors would be exactly the same. A contrary holding here would thus do little more than make this kind of transaction somewhat more expensive—from interest and transaction costs—for a company with a sufficient earned surplus determined to repurchase its shares. It would not appreciably serve to protect other creditors.

We share the concern expressed by Judge Goodwin in his dissenting opinion for the potential abuse of the corporation's power to purchase its own shares, but we do not believe that the danger he envisions exists under these circumstances. Stockholders who sell all of their shares as Paterna did, cannot be said to have taken "the risk out of risk capital." If they sell out completely, they give up their equity interest, and thus give up the capital involvement. They should not, without good reason, be forced to continue to bear the risk of risk capital when they are no longer eligible for the rewards or in control of voting stock.

Nor do we choose to presume the existence of fraud in circumstances which do not suggest it. Paterna sold all of her shares, retaining no equity interest or control over National's fortunes. The Corporation had sufficient earned surplus to cover the entire purchase price at the time of the stock transfer. National was apparently healthy at that time, and no violation of California Corporations Code § 1708 has been found.[5] We do not suggest that a trustee in bankruptcy must carry the burden of proving actual fraud to set aside arrangements such as this in all cases. We do not consider what, if anything, the trustee must show under different conditions, but surely there must be some more substantial reason for suspicion than we face here.

We hold, therefore, that Paterna's deed of trust is not invalidated by the unenforceability of her note. The Minnesota Supreme Court has expressed a similar conclusion. *Tracy v. Perkins-Tracy Printing Co.,* 278 Minn. 159, 153 N.W.2d 241 (1967). We believe it is consistent with the purposes of the pertinent sections of the California Corporations Code.

Reversed and remanded.

5. *See* note 1.

REAL, District Judge (concurring):

I concur. I only add that in *Goodman v. Global Industries,* 80 Cal.App.2d 583, 182 P.2d 300 and *In re Mathews Construction Co.,* 120 F.Supp. 818 (S.D.Cal.1954), those courts were dealing with what they termed executory contracts.

California Civil Code § 1661 defines an executed contract as "one, the object of which is fully performed." Here, the object of the contract—i. e., transfer of Appellant's interest in the corporation—was fully performed. All that remained was the payment of money. This is the classic executed contract. *Smith v. Allen,* 68 Cal.2d 93, 65 Cal.Rptr. 153, 436 P.2d 65 (1968).

ALFRED T. GOODWIN, Circuit Judge (dissenting):

I believe that we should affirm. *In re Belmetals Mfg. Co., Inc.,* 299 F.Supp. 1290 (N.D.Cal.1969), *affirmed sub nom. Eranosian v. England,* 437 F.2d 1355 (9th Cir. 1970). The only part of the questioned transaction relevant here is the duty of the corporation to pay the installments on the note. This duty is executory. It is also unenforceable.

As a practical matter, when the trustee seeks to marshal the assets of the bankrupt estate he cannot sell the real property free of the lien. The lien can be satisfied only by having someone pay a debt that is no longer lawfully collectible in California. *Trowbridge v. Love,* 58 Cal.App.2d 746, 137 P.2d 890 (1943), is at least consistent with my view that when such a debt is discharged the lien securing the debt becomes *functus officio.*

Further, I am not satisfied that the policy reasons given by the majority in favor of the lien holder in this case overcome equally valid policy reasons which may have commended themselves to the California legislature when it enacted Cal.Corp.Code § 1707. The majority here is creating a precedent that may frustrate present and future creditors of other small, closely held corporations. *See McConnell v. Estate of Butler,* 402 F.2d 362 (9th Cir. 1968).