[Civ. No. 1492.   Third Appellate District.—July 6, 1916.]

# E. A. MAJORS, Appellant, v. MARK A. GIRDNER, Respondent.

CORPORATION—SALE OF STOCK—NATURE OF TRANSACTION.—The acceptance by a corporation of a promissory note given in payment for its stock upon the agreement that the corporation will issue the stock and deliver it to the purchaser upon the execution and delivery of the note, constitutes a present sale of the stock, and the stock becomes *ipso facto* the property of the purchaser, notwithstanding the certificate therefor is not issued and delivered.

ID.—CERTIFICATE OF STOCK—EVIDENCE OF OWNERSHIP.—A certificate of stock of a corporation is only the evidence of the ownership thereof, and merely constitutes proof of property which may exist without it.

ID.—RESCISSION OF SALE—FRAUD—PLEADING—OFFER OF RESTORATION OF STOCK—ESSENTIAL AVERMENT.—In an action by the assignee of a corporation to recover on a promissory note, assigned to the plaintiff for the purpose of collection only, and accepted by the corporation for the purchase price of stock, where the answer asks for affirmative relief by way of a rescission of the contract of sale upon the grounds of fraud and misrepresentation, and the surrender and cancellation of the note for want of consideration by reason of such fraud, it is essential that the answer by appropriate averment show an offer to restore the stock, notwithstanding the certificate therefor has not been issued.

ID.—FRAUD OF CORPORATION—INSUFFICIENCY OF EVIDENCE.—The failure of a corporation to keep its agreement, upon a purchase of its stock, that it will contemporaneously with the execution and delivery of the promissory note of the purchaser given therefor, issue the stock to the purchaser, and the failure to keep its agreement to sell the stock upon his demand at a price in advance of that paid therefor, does not involve such misrepresentation and fraud as will work a rescission of the contract of sale, but is merely a breach of the covenants of the contract.

APPEAL from a judgment of the Superior Court of Sonoma County, and from an order denying a new trial.   Emmet Seawell, Judge.

The facts are stated in the opinion of the court.

E. J. Dole, for Appellant.

L. G. Scott, for Respondent.

HART, J.—The action is on a promissory note for the sum of $350, which, it is alleged, was made and delivered by the defendant to the Pacific Coast Securities Company, a corporation (for brevity to be hereinafter referred to as "the corporation"), and after such execution and delivery, assigned by the original payee to the plaintiff, "who is now the lawful owner and holder thereof."

The answer admits the execution and delivery of the note as alleged in the complaint, but asserts that the instrument was procured from the defendant by the corporation above named through misrepresentation and fraud.

The gist of the charges of fraud set out in the answer may thus summarily be stated: That the corporation, through its duly accredited agents, called upon the defendant and offered him the stock of the corporation at the price of $15 per share, the par value of which was $10 per share; that said agents guaranteed and warranted said stock to be of the value at least of $15 per share; that at said time, as an inducement to the defendant to buy said stock, said agents entered into an agreement in writing, whereby they bound the corporation "to extend the time of payment of note to suit applicant for stock and to resell stock for $20, if so desired, by January 15, 1914," said agreement being signed by "E. H. McConkey, by Clements & Harold, agent." The further representations were made, so the answer states, that said stock "was very valuable," that the same could be turned and sold at any time for $15 per share, and that the corporation was in a flourishing condition and was financially sound. It is alleged that each and all of said representations were made for the purpose of inducing the defendant to purchase said stock, and that they were false and fraudulent, made with the intent to deceive the defendant and to persuade him to buy the stock; that said stock was not at said time of any real market value, that there were no prospects of the same being of any material market value, and that it was not then "worth $10 per share or any other amount, and that said corporation never intended to resell the same for $20 per share or $15 per share or $10 per share or for any other amount so far as said corporation had any knowledge"; that said corporation "was not in a money-getting and flourishing financial condition at the time or at any other time." It is alleged that the defendant believed the representations so

made, and was thus deceived and misled into purchasing, and did purchase, twenty-five shares of said stock, "which he would not otherwise have purchased."

It is further charged that the corporation represented and agreed that, upon the execution and delivery by the defendant to it of the note in suit, it would at once and without delay issue to said defendant twenty-five shares of its stock which would, as it was then represented was true of other stock of the same kind, earn and return dividends of not less than seven per cent per annum, "which was the only consideration for the execution of said note to said corporation, and that this was the only consideration ever to be given or paid for said promissory note, but defendant alleges that said corporation did not execute and deliver or issue stock to defendant or in his name or in any other person's name for him, and did never deliver to said defendant any certificate of stock, or thing at all, and there was nothing whatever given for said promissory note and the same was without consideration and has been at all times without consideration." These facts, it is declared, were not discovered by the defendant until the time at which he applied for a renewal of the note so as to extend the time for the payment thereof, when, upon giving the renewal note and at the same time paying to the corporation $25 in cash as and for principal and paying the interest accrued upon the original note, he asked what had become of the corporate stock certificate which the corporation had agreed to issue to him, and that he was then told and assured that the certificate for the twenty-five shares of stock had been issued as agreed upon, "which statement was false, and said corporation and the officers and members thereof knew that the same was false and untrue"; that "said stock was not then nor had it ever at any time been issued to defendant." It is averred, in effect, that but for the false representation then made as to the issuance of said stock and the further false representations as to the value of said stock and the flourishing and sound financial condition of the corporation, the defendant would not have made and delivered to the corporation the renewal note in lieu of the original note or paid to the corporation the sum of $25 on the principal and the accrued interest on the original note.

The "separate and further defense" set up in the fourth paragraph involves, in effect, along with some conclusions

31 Cal. App.—4

of the pleader, an iteration, substantially, of the allegations of the preceding paragraphs of the answer. It is to the effect that all the agreements, etc., between the corporation and the defendant "were *purely executory,* in that the matters and things and agreements on the part of said corporation were never performed and were matters precedent to the issuance of said note and notes, in that said corporation was, as per the stipulations, to execute and deliver to defendant the certificate of stock . . . before said note or notes were to be delivered or to take effect, and said corporation was to place defendant in a position that he should be protected and guaranteed that the stock would and should be of the guaranteed value of $15 per share, and in that said stock should meanwhile be drawing dividends, none of which matters and things were done or performed by said corporation, and *the defendant had the right to rescind the same at any time,* and did rescind the same in writing before the bringing of this action and before the acquisition or possession thereof by plaintiff herein, all of which matters and things plaintiff well knew before the taking over of said note by him,'' etc.

The efficacy of the answer in the statement of a defense to the action was not challenged by demurrer.

The cause was tried by a jury and a verdict returned in favor of the defendant. Judgment was entered accordingly.

The plaintiff appeals from the judgment and the order denying him a new trial.

In the outset, it is proper to state that no claim is here made that the plaintiff is an innocent purchaser of the note for value. On the contrary, it is conceded that the plaintiff is acting solely in this action for the corporation, the original payee, and that the note was assigned to him for the purpose of collection only.

The point is made for the first time in this court that the answer does not state facts sufficient to constitute a defense to the cause of action pleaded by the plaintiff.

One of the objections specifically made against the answer is that the defendant, who asks for affirmative relief by way of a rescission of the contract of sale upon the ground of fraud and the surrendering up and cancellation of the note in suit for want of consideration therefor by reason of such fraud, has not by appropriate or other averment in his answer offered to restore the stock which he alleges he purchased from

the corporation.   The point is well taken.   The transaction between the corporation and the defendant constituted, according to the history thereof as it is explained by the answer, an executed contract of sale, and the stock became the property of the defendant upon the consummation. of that transaction, notwithstanding that the certificate for the stock was not, so the answer declares, issued and delivered to the defendant.   (*Mason* v. *Lievre,* 145 Cal. 514, [78 Pac. 1040].) A certificate for the stock of a corporation is only the evidence of the ownership thereof, or, as the cases put the proposition, it merely constitutes proof of property which may exist without it.   (*Mitchell* v. *Beckman,* 64 Cal. 117, [28 Pac. 110], and cases therein cited.)   In that case, it is among other things said: "When the corporation has agreed that a person shall be entitled to a certain number of shares in its capital, to be paid for in a manner agreed upon, and that person has agreed to take and pay for them accordingly, he becomes their owner by a valid contract made upon a valuable consideration."   In this case, according to the answer, the defendant made application for the purchase of the stock, and the same was approved by the corporation by accepting the note of the defendant in payment therefor.   This, as stated, constituted a sale (Civ. Code, sec. 1721, *Johnson* v. *Dixon Farms Co.,* 29 Cal. App. 52, [155 Pac. 134] ; 35 Cyc. 25), and thereupon the title to or ownership of the stock *ipso facto* vested in the defendant.

It is a settled rule in equity and expressly affirmed by legislative fiat (Civ. Code, sec. 1691, subd. 2) that in an action for rescission the party seeking the remedy "must restore to the other party everything of value which he has received from him under the contract," etc.   While there are in the answer some vague and indefinite allegations intended to disclose that the stock was not of the value it was represented to be by the agents of the corporation, there is no allegation in the defendant's pleading that it is wholly valueless.   If it was of some value (and it may be assumed that it was, it being property), it was the duty of the defendant, as a prerequisite to his right to a rescission of the contract on the ground of fraud, to restore or offer to restore by appropriate and sufficient averment in his answer the stock to the plaintiff or to the corporation, for whose benefit the plaintiff is admittedly suing (*Kelley* v. *Owens,* 120 Cal. 502, [52 Pac. 797]), and to do this it was not requisite, as we have already

shown, that he should have previously had issued to him or had in his possession the certificate for the stock, which is, as suggested, the mere physical evidence of the interest he owned in the capital stock of the corporation.

The answer, as a pleading seeking affirmative relief, is in other respects by no means an exemplar in pleading. But, taken in its entirety, we are able to say that the allegations of fraud on the part of the corporation in the transaction eventuating in the sale of the stock are sufficient in substance for the purpose for which they were intended to place the answer, as a pleading looking for affirmative relief, beyond the reach of a general demurrer.

But, notwithstanding the defectiveness of the answer, the case appears to have been tried by the plaintiff upon the theory that the defendant's pleading was sufficient in all respects, no objection whatever having been made by the plaintiff to the evidence offered by the defendant in support of the charge of fraud as set forth in his answer. Even if it be true, however, that, by failing to demur to the answer and to object to evidence offered in support of the allegations thereof, the plaintiff waived restoration of the stock by the defendant, and that the case was tried by the plaintiff upon the theory that the defendant had, in the matter of pleading, gone as far as required in an action for rescission, still the evidence falls far short of supporting the verdict.

The defendant's was the only oral testimony offered and received in his behalf, and, since the plaintiff presented no evidence from which even the remotest inference of fraud on the part of the corporation in the transaction may be drawn, it necessarily follows that the jury predicated their verdict wholly upon the testimony of the defendant. The facts of the transaction will, therefore, be taken from his version thereof, and as so taken may briefly be stated as follows:

On the twenty-second day of October, 1913, the defendant made an application to the corporation for twenty-five shares of its capital stock for $15 per share. The application was in printed form, presumably the form regularly used by the company for that purpose, and the same was signed by the defendant. At the same time that said application was executed and delivered to the agents of the corporation, Messrs. Clement & Harold, by whom the transaction was conducted

for the corporation, the defendant as in payment for said stock made and delivered to said agents his promissory note for the sum of $375, payable on the fifteenth day of January, 1914. For this note a receipt was delivered to the defendant, the same being signed: "E. H. McConkey (vice-president and manager of the corporation), by Clement & Harold, agents." Among other things, said receipt contained the following agreement on the part of the corporation: "We agree to extend time of payment on note to suit applicant for stock and to re-sell stock for $20, if desired, by January 15, 1914."

The defendant, some time before the fifteenth day of January, 1914, made a demand upon or request of the corporation to sell the stock in accordance with the above agreement. The corporation did not sell the stock. On or about January 15, 1914, the defendant gave the corporation a renewal note for the original one (page 25, Transcript), and, on the nineteenth day of that month, the corporation, through its secretary, W. B. Slade, forwarded the original note to the defendant, with the following letter: "Enclosed you will find your old note for $375, due on January 15, 1914, marked 'canceled.'" On the fifteenth day of May, 1914, the defendant paid the corporation the accrued interest and the sum of $25 on the principal of the note previously given, and asked for and was granted a further extension of time for the payment of the balance of said note, giving in lieu thereof the note in suit for the sum of $250. Said note was dated on the day of its execution and delivery (May 15, 1914), and made payable four months after date, or on the sixteenth day of September, 1914.

On the eleventh day of September, 1914, the defendant addressed to McConkey, manager of the corporation, the following letter: "It will be necessary for you to extend the time on my note to Oct. 15, 1914, as I have no funds at present, but expect to cash some securities before that time to pay same with. I have explained to the lady in the office, as she can tell you."

On September 5, 1914, (ten days prior to the date of the maturity of the note in suit), the defendant received from the corporation a duly executed certificate for the twenty-five shares of stock purchased by him.

The defendant testified: That, when the matter of the sale and purchase of the stock was under negotiation between him and the agents of the corporation, the said agents "represented that they had the agency for the California State Life Insurance Company, that they was reselling all of their business for them. As I had stock in the California State Life Insurance Company, I took a chance. They represented that the dividends were enormous · and that the dividends were already earned; they had the money to pay the dividends. . . . After representing that they had the agency for the California State Life, and as I knew that they were doing a big business, and representing that the dividends were earned, they had them there to pay, and that if I didn't want the stock that they would resell it on the fifteenth day of January. Q. Now, you are speaking about this stock in the Pacific Securities Company? A. Yes, sir. Q. This was the stock that these agents tried to sell you? A. Yes, sir."

The defendant, after so testifying, further said that the reason he renewed the note on the several occasions referred to above was because he was told that the stock had been issued to him, although he had not received the certificate therefor. He declared that the agreement was that the certificate would be issued and dated at the time of the delivery of the original note, and that he would, therefore, be entitled to any dividends earned by the stock from that time on; that, as a matter of fact, the certificate was not issued until nearly a year after he had bought the stock, and that he would, as a consequence, lose the dividends, if any accrued upon the stock, for the entire time during which he believed he was the owner of it. On cross-examination, however, the defendant testified that the reason he renewed the note as indicated was because he did not have ready money with which to take the note up.

The above is the sum of the testimony upon which the jury founded their verdict.

Nowhere is there any testimony to be found in the record that the corporation was not financially sound or not doing a business profitable to its stockholders. Nor did the defendant testify or show by any other testimony or proof that the capital stock of the corporation was not of the value that it was represented to be by the corporation's agents. And there

is absolutely no proof whatever that the stock purchased by the defendant was not dividend earning property.

As to the representations made by the corporation's agents to the defendant at the time the stock was purchased by the latter, it is difficult to say from the testimony of the defendant whether, in making said representations, the agents were referring to the California State Life Insurance Company and its stock or to Securities Company and its stock, In any event, the testimony of the defendant, as it is presented in this record, is that he personally knew that the stock to which said agents were referring and as to which the representations mentioned were made was of great value and profitable to the stockholders.

But, when boiled down to its actual purport, the real gist of the defendant's complaint against the transaction involved herein, as the same is gathered from his testimony, is that he has been defrauded of the dividends to which he was entitled on his stock, because the corporation failed to keep its alleged agreement that, contemporaneously with the delivery to it of the original note, it would issue and deliver to the defendant a certificate for the twenty-five shares of stock purchased by him, and, furthermore, that he suffered injury because it failed to keep its agreement to sell said stock for him, upon his demand, at a price in advance of that paid by him therefor, by January 15, 1914. It is very obvious that these omissions on the part of the corporation do not involve such misrepresentation or fraud as will work a rescission of the contract of sale. Indeed, they cannot be said to involve misrepresentation at all. They amounted to a mere breach of certain covenants of the contract. As above stated, the stock purchased by the defendant became his property the moment that the sale was completed, and the certificate amounted only to tangible proof of such ownership. He was, of course, entitled to a certificate showing his ownership of the stock, but the failure of the corporation to issue and deliver it to him could not have the effect of vitiating the contract of sale or impairing his title to the stock. It was, as above suggested, merely the violation by the corporation of an obligation which the defendant by appropriate legal proceedings could have compelled it to discharge.

As to the point involving failure by the corporation to resell the stock, it is perfectly clear that, even if that were

a legitimate ground upon which rescission of the sale could be worked, the defendant, having made a payment on the original note and given a new note for the balance subsequent to the expiration of the time within which he was authorized to require the corporation to resell his stock, thereby waived that covenant or, at any rate, is by that act estopped from setting up the breach thereof as against the honesty and good faith of the transaction culminating in the making of the note in dispute or as against the legal integrity of the note itself.

Our conclusion is that the proofs utterly fail to disclose fraud on the part of the plaintiff in the transaction involved herein, and that if the stock of the defendant earned dividends during the period of time intervening between the date of the purchase thereof and the date of the issuance and delivery to the defendant of the certificate for said stock for which the corporation has not accounted or which it has not paid to the defendant, the latter should have set up the amount of such dividends as a setoff or counterclaim to the note in suit. This was the only recourse left to him under the facts of the transaction as he himself has detailed them in this case.

The judgment and the order are reversed, with directions to the court below to grant the defendant leave, if he may elect to take that course, so to amend his answer as to plead therein any counterclaim available to him by reason of the stock dividends claimed by him.

Chipman, P. J., and Ellison, J., *pro tem.,* concurred.