[Civ. No. 4901. Fourth Dist. May 13, 1954.]

SAMUEL L. SCHREIBER et al., Plaintiffs and Appellants, v. SAN JOAQUIN EXPLORATION COMPANY (a Corporation), Defendant and Appellant.

Dorris, Fleharty & Phillips, Dorris, Fleharty, Phillips & Underhill, and Conron, Heard & James for Plaintiffs and Appellants.

Siemon & Siemon for Defendant and Appellant.

MUSSELL, J.—This is an action to foreclose a chattel mortgage and an assignment of an oil and gas lease given as security for the payment of a promissory note in the sum of $24,000 payable to the plaintiffs and executed by the defendant corporation. The execution and nonpayment of the note was admitted by defendant and special defenses of failure of consideration and usury were alleged. Defendant also filed a cross-complaint in which it sought a cancellation of the note, mortgage, lease and assignment of an overriding royalty agreement.

The trial court limited the amount of recovery on the principal of the note to $16,000, holding that there was a failure of consideration for the sum of $8,000 included in the amount sought to be recovered.

Plaintiffs appeal from the judgment only insofar as it fails to award them the $8,000 deducted and defendant appeals from the whole of the judgment except that part thereof denying plaintiffs the right to recover the said sum of $8,000.

Plaintiffs each owned 7,500 shares of stock in defendant corporation. On December 6, 1948, they and each of them transferred this stock to Albert Sanders, who became president of defendant corporation on or about said date. The consideration for each of these transfers was the sum of $5,000. Each plaintiff received $1,000 in cash and a promissory note executed by Sanders in the sum of $4,000. Apparently these notes were dated November 20, 1948, were payable on or before May 20, 1949, and were secured by pledge of 15,000 shares of stock in defendant corporation. The record shows that this stock was transferred to Sanders, with consent of the Division of Corporations in December of 1948.

On April 27, 1950, the defendant corporation executed a promissory note in the sum of $16,000, payable to the Bank of America National Trust and Savings Association. On October 1, 1950, a special meeting of the defendant corporation was held to discuss the financing of the operations of the company. At this meeting Sanders, who was president, stated that the corporation did not have sufficient funds to pay its note to the bank and that this obligation would have to be refinanced; that plaintiffs had offered to take up said note for the company and give the company until May 31, 1951, to pay the same, providing the company would repurchase from them the stock which they held in the company for the sum of $8,000; that plaintiffs each held 7,500 shares in the company stock which he, Sanders, had agreed to purchase and that he had defaulted in the purchase contract. The following resolution was then adopted by the defendant corporation:

"Resolved: That the President and Secretary be, and they are hereby, authorized to execute on behalf of the corporation a promissory note in the sum of $24,000.00 bearing interest at 5% per annum and payable on May 31, 1951 in favor of Samuel L. Schreiber in consideration of said Samuel L. Schreiber and/or Joseph M. Thomas assuming and paying

the obligation of the corporation in the principal sum of $16,000.00 payable to the Bank of America, Bakersfield, California and in further consideration of the agreement of said parties to sell to the corporation 15,000 shares of the capital stock of the corporation for the sum of $8,000.00.''

It was further resolved that a chattel mortgage be executed by the corporation to secure payment of the corporate note. Pursuant to this resolution, the corporation executed a promissory note to plaintiff Schreiber for $24,000, payable on or before May 31, 1951, and secured by a chattel mortgage on the corporation's personal property. Plaintiffs paid $16,000 to the Bank of America on the corporate note. The Thomas note was sent into escrow and cancelled, and the Schreiber note was surrendered at the trial.

On May 31, 1951, another special meeting of the corporation was held to discuss obtaining an extension of time for the payment of the $24,000 note which the company was then unable to pay. The defendant corporation agreed to and did convey to plaintiffs an interest in an oil lease in consideration of an extension of the time of payment of the $24,000 note to August 30, 1951. The note was not paid and this action in foreclosure followed.

██ It is apparent from the record before us that the defendant corporation attempted to purchase the corporate stock of the plaintiffs for the sum of $8,000, if plaintiffs would assume and pay its obligation to the Bank of America in the sum of $16,000 and the note for $24,000 was executed for that purpose. The trial court correctly found that the $8,000 consideration given for the execution of the $24,000 note was invalid and deducted $8,000 from the principal due on the note.

Section 1705 of the Corporations Code provides: ''A corporation shall not purchase directly or indirectly any shares issued by it or by any corporation of which it is a subsidiary, except as authorized by Section 1706 or Section 1707. . . .''

Plaintiffs argue that the purchase of stock in this action was authorized as an exception to the rule stated in sections 1706 and 1707 of the Corporations Code, particularly subdivision (a) of 1706, which provides that the corporation may purchase out of stated capital or out of any surplus shares issued by it or by a corporation of which it is a subsidiary to collect or compromise in good faith a debt, claim

or controversy with any shareholder. Section 1707 provides in part:

"A corporation may also purchase shares issued by it, or by a corporation of which it is subsidiary, in any of the following cases:

"(b) From surplus resulting from reduction of stated capital, subject to the provisions of Chapter 5 of this part."

Plaintiffs argue that there is nothing in the quoted sections which would have prohibited the corporation from making a purchase by taking the proper steps authorized by the section to create a surplus by a reduction of stated capital. In this connection they cite *Stewart* v. *Stewart Hotel Co.*, 33 Cal.App. 167 [164 P. 620]. In that case the court held that, beyond the exceptions declared by statute, a corporation has no power to purchase its own stock, since the result of such a transaction would be to illegally withdraw and pay to a stockholder a part of the capital stock of the corporation. (See also *Stevens* v. *Boyes Hot Springs Co.*, 113 Cal.App. 479, 483 [298 P. 508].)

In *Goodman* v. *Global Industries*, 80 Cal.App.2d 583, 587 [182 P.2d 300], the court, in commenting on the language used in section 342 of the Civil Code (now Corp. Code, §§ 1705-1709) said:

"The words 'directly or indirectly' indicate the intention to comprehend and include all types of repurchases however devised, and when the section is read in its entirety it is clear . . . that it was designed to prohibit any purchase by a corporation of its own shares except under conditions prescribed within the section's own four corners."

In the instant case plaintiffs failed to bring themselves within the exception stated in section 1706, subdivision (a), and 1707, subdivision (b), because they were not shareholders in the defendant corporation, having a claim against the corporation or a debt due them from it. The two promissory notes for $4,000 each were personal notes of Sanders and the corporation was not obligated to pay them. The defendant corporation had no surplus resulting from reduction of its stated capital. Hence the provisions of section 1707, subdivision (b), are not applicable.

As noted, defendant's appeal is from the whole of the judgment except insofar as it denied plaintiffs the right to recover the $8,000 which the corporation agreed to pay for

the Sanders stock. However, defendant corporation has filed no brief nor has it presented arguments or authorities in support of its appeal.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

Plaintiffs' and appellants' petition for a hearing by the Supreme Court was denied July 7, 1954.