[L.A. No. 30620. Aug. 19, 1976.]

UMF SYSTEMS, INC., Plaintiff and Appellant, v.
ELTRA CORPORATION et al., Defendants and Respondents.

754

**COUNSEL**

Brant, Pettitt & Druten and Charles A. Druten for Plaintiff and Appellant.

Cullinan, Burns & Helmer, Brian P. Burns, Lawrence W. Thorpe, Harris B. Taylor, Ullar Vitsut, Bert C. Johnson, Parker, Stanbury, McGee & Babcock and White McGee, Jr., for Defendants and Respondents.

## OPINION

**RICHARDSON, J.**—We consider the application of those provisions of the Corporations Code (to which all statutory references are made unless otherwise noted) which protect corporate creditors from unlawful distributions of corporate funds for the benefit of shareholders through the corporation's unauthorized repurchase of its own stock. Section 826, with which we are primarily concerned, authorizes an action against the corporation and its directors by a judgment creditor whose "debt or claim" arose prior to the unlawful distribution. In the present case we examine the statutory expression "debt or claim," and determine whether it may reasonably be interpreted to include the corporation's obligations to pay rent under a lease executed prior to the unlawful distribution with default in the rental payments occurring thereafter. Stated another way, the issue is—do the corporation's obligations to pay rent accruing after the purchase of its shares, under a lease executed before the purchase, constitute a "debt or claim" within section 826? As will appear, we have concluded that, for the limited purpose of conferring standing to sue under section 826, such a preexisting obligation to pay rent constitutes a "debt."

In January 1974, plaintiff UMF Systems, Inc. (UMF), a creditor of ATI, Inc. (ATI), an insolvent corporation, reduced to judgment, currently unsatisfied, its claim of $18,183 against ATI for unpaid rent, interest, attorney's fees and costs. UMF thereupon sued defendants Bissell and Salisbury (defendants), who are former directors of ATI. According to the complaint, ATI leased office premises from UMF in March 1970 for a period of three years and eight months. In February 1972, defendants, as directors, allegedly authorized and ratified ATI's purchase of its own shares from two other corporations at a time when ATI did not possess the earned surplus required under applicable statutes. ATI continued to pay rent to UMF until March 1973 when ATI defaulted, thereafter remaining in default and becoming insolvent.

Defendants demurred to the complaint on the ground that UMF possessed no "debt or claim" under section 826, because the default occurred *after* the unlawful stock purchase had occurred, and that, accordingly, UMF therefore had no cause of action under section 826. The trial court sustained the demurrer, and dismissed the action. Plaintiff appeals.

We examine the relevant statutes. Section 824 states that "Except as provided in this division, the directors of a corporation shall not authorize or ratify the purchase by it of its shares, or declare or pay dividends, or authorize or ratify the withdrawal or distribution of any part of its assets among its shareholders." Sections 825 and 826 provide that the directors' liability is limited ". . . to the amount of the unlawful dividends, purchase price, withdrawal, or other distribution." Subsequent sections describe the conditions under which redemption or purchase of shares may occur (see § 1700 et seq.). For example, under section 1707, subdivision (c), a corporation may purchase its shares out of "earned surplus," and under section 1708, such a purchase shall not be made "in any case when there is reasonable ground for believing that the corporation is unable, or, by such purchase . . . will be rendered unable, to satisfy its debts and liabilities when they fall due, except such debts and liabilities as have been otherwise adequately provided for."

Section 826 provides for suits against the corporation and its directors by "[a]ny one or more judgment creditors of the corporation *whose debts or claims arose prior to the time of violation of Section 824 . . . .*" (Italics added.)

What is meant by the term, "debt?" As previously noted, UMF contends that ATI incurred a "debt" within the meaning of section 826 when it executed the lease with UMF and agreed to pay the specified rentals. Defendants, on the other hand, argue that no "debt" arose until *after* violation of section 824, when ATI defaulted on its lease payments. According to Black's Law Dictionary (rev. 4th ed. 1968) at page 491, "The word 'debt' has no fixed legal meaning [citation] but takes shades of meaning from the occasion of its use and color from accompanying words [citation]." We are thus cautioned to hesitate in the adoption of any specific, all-inclusive definition of "debt," without close attention to the particular context in which the word appears.

For example, in an early case we held that, for purposes of certain tax statutes then in effect, a "debt" was "A sum of money which is certainly and in all events payable . . . without regard to the fact whether it be payable now or at a future time. A sum payable upon a contingency, however, is not a debt, or does not become a debt until the contingency has happened . . . . [Citation.] So of a covenant to pay rent quarterly. It creates no debt until it becomes due, for before that time the lessee may quit, with the consent of the lessor, . . ." (*People* v. *Arguello* (1869) 37 Cal. 524, 525; see also *Dean* v. *Kuchel* (1950) 35 Cal.2d 444, 446 [218 P.2d

521] [execution of long-term lease creates no immediate indebtedness for the aggregate installments, for purposes of the constitutional debt limitation].)

On the other hand, "debt" has been given a much more expanded meaning in a context closely analogous to that before us. For purposes of construing the provisions of California's Uniform Fraudulent Conveyance Act (Civ. Code, § 3439 et seq.), the word "debt" is statutorily defined as including ". . . any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." (*Id.,* § 3439.01.) Thus, it is a fraudulent practice "as to both present *and future* creditors" for one to convey property with the intent or belief that he will incur ". . . debts [including contingent debts] beyond his ability to pay as they mature, . . ." (*Id.,* § 3439.06, italics added.)

Unlike the Fraudulent Conveyance Act, however, section 826 of the Corporations Code by its terms does not protect all future creditors, for a "debt" must be incurred *prior* to the violation at issue. (See Note (1951) 39 Cal.L.Rev. 562, 564, urging an amendment to § 826 to protect subsequent creditors who act without knowledge of the unlawful distribution.) ▮ Nevertheless, given the evident purpose underlying section 826 to afford protection to prior creditors injured by an illegal distribution of corporate funds to stockholders, we think the word "debt" may reasonably be interpreted as including a preexisting contractual obligation to pay future rent. Creditors such as UMF who, prior to distribution, possess such enforceable rights arguably have a greater need for protection from unlawful distributions than other creditors: Unlike those creditors who contract with the corporation *after* the unlawful distribution, creditors such as UMF have had no opportunity to learn of the distribution and, by appraising its probable effects upon the corporation's solvency, protect themselves. Such parties, becoming creditors before the section 824 violation, have negotiated lease instruments calling for the payment of corporate funds at present and at future times. In such a situation any subsequent distribution to shareholders may, by endangering the corporation's solvency, directly increase the likelihood of a default. Affording to such creditors the section 826 remedy may well have the salutary effect of deterring corporate directors from engaging in unlawful distributions.

Moreover, no discernible reason of policy suggests itself for favoring creditors who, at the time of the section 824 violation, hold matured debts or claims over those holding unmatured or contingent debts or

claims. Both classes of creditors have contracted with the corporation in reliance upon its present state of presumed liquidity or solvency; both are equally apt to be damaged by an unlawful distribution of corporate funds. And, as we have noted, unlike future creditors, neither type of prior creditor has had an opportunity to assess the likely effects of the distribution before executing its contract.

Defendants contend, however, that the policy of protecting corporate creditors is outweighed by a necessity of limiting the personal liability of corporate directors. They assert that an unduly broad construction of section 826 would inhibit directors from assuming those ordinary risks attendant upon the operation of a business enterprise and discourage them from entering into otherwise sound and long-term business relationships.

There are several answers to the claim. First, our interpretation of section 826 need not invoke any spectre of unlimited liability. By its very terms the section limits liability to the amount of the unlawful dividend, purchase or other improper distribution. Second, the making of an unlawful distribution of corporate funds cannot properly be characterized as an ordinary business risk. Such distributions are unlawful and violate public policy. Finally, we doubt that our holding will truly inhibit the formation of long-term business arrangements. To the contrary, we think it fair to assume that prospective creditors, assured that they may rely on the protections of section 826 in the event of a subsequent violation of section 824, will be more likely to extend credit or execute leases or otherwise assist in the development of new enterprises with a resultant encouragement to business activity.

Defendants suggest, as additional argument, that our interpretation of the term "debt" is contrary to its generally accepted meaning within the business and financial community. They assert an inherent unfairness in measuring their liability by a standard with which they, as businessmen, are unfamiliar. Further, they observe that, under Corporations Code section 829, they are entitled to rely, in good faith, upon the corporate balance sheet and profit and loss statements, maintaining that an item such as future rent as a contingent liability would not appear upon these documents.

Initially, we cannot accept defendant's premise that an obligation to make future lease payments does not constitute "debts" within generally accepted accounting principles, and that accordingly the obligation need

not be disclosed on the corporation's balance sheet. Certain authorities recognize that some lease obligations (such as those arising under leases executed with a view toward purchasing the leased premises, commonly denominated "lease-purchase" agreements or "financing leases") should be considered "as a liability" and for financial reporting purposes, "The lessee would . . . report the lease obligation in the balance sheet, classifying the liability into current and noncurrent portions." (Johnson & Gentry, Finney and Miller's Principles of Accounting (Intermediate) (7th ed. 1974) ch. 8, pp. 209, 213.) And even as to ordinary "operating" leases, the lessee should disclose information regarding the details of the lease in notes to the financial statement. (*Id.*, pp. 205-206; see also The Lawyer's Use of Financial Statements (Cont. Ed. Bar 1967) § 21.3, p. 244, regarding disclosure of contingent liabilities.) Lending institutions, understandably concerned with a debtor's long-term cash flow projections are, from an accounting standpoint, interested in present and future lease commitments.

Moreover, we emphasize that our holding herein is limited to the question whether contingent creditors such as UMF have *standing* to sue defendants under section 826. Specifically, we are not herein concerned with the threshold question whether, as alleged by UMF, defendants' actions in authorizing the stock purchase actually violated section 824. Similarly, if the problem before us were whether sufficient earned surplus existed to justify the purchase, the more limited definition of "debt" urged by defendants might well apply. Mere "paper" profits, anticipated earnings, or accrued items of debit and credit are not ordinarily considered in computing the earned surplus available for a purchase of the corporation's own stock. (*Mindenberg* v. *Carmel Film Productions* (1955) 132 Cal.App.2d 598, 607 [282 P.2d 1024]; *Southern Cal. Home Builders* v. *Young* (1920) 45 Cal.App. 679, 693 [188 P. 586].) If. as defendants assert, they can demonstrate that contingent or future rental expense does not appear on a corporate balance sheet or profit and loss statement, that fact might very well assist defendants in establishing a defense under section 829 (good faith reliance upon financial statements). In evaluating plaintiff's present claim of standing under section 826, however, we must assume that a violation of section 824 has occurred, as alleged in plaintiff's complaint.

Finally, defendants urge that provisions comparable to section 826 are considered "penal" or "punitive" in nature and, as such, are to be strictly construed. (See *Western Mortgage etc. Co.* v. *Gray* (1932) 215 Cal. 191, 200 [8 P.2d 1016, 80 A.L.R. 866]; *Barney* v. *Buswell* (1965) 236

Cal.App.2d 208, 210 [45 Cal.Rptr. 908]; *Merrill* v. *Los Angeles Cotton Mills, Inc.* (1932) 120 Cal.App. 149, 159 [7 P.2d 329].) Were we concerned here with a question pertaining directly to the substantive rights and duties of corporated directors, the strict construction rule might apply. But, as explained above, the question before us involves essentially a question of eligibility or standing: What kinds of creditors are entitled to sue, under section 826, to recover damages for a violation of section 824? Viewed in this light, section 826 is revealed as primarily and fundamentally a *remedial* statute and, accordingly, should be liberally construed to promote the general object sought to be accomplished. (See *California Grape etc. League* v. *Industrial Welfare Com.* (1969) 268 Cal.App.2d 692, 698 [74 Cal.Rptr. 313].) ▮ We conclude that the general purposes of the legislation will more faithfully be served by an interpretation of "debt" which permits inclusion of rentals for which the debtor has unconditionally committed itself before the section 824 violation, even though the event triggering the default occurs thereafter.

Although UMF's complaint contains additional causes of action which were likewise dismissed by the trial court after it sustained defendants' demurrer, UMF does not presently seek reinstatement of those causes, and, accordingly, we do not address them.

The judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.